IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND, LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CHICAGO LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, and JAMES S. JORGENSEN, Administrator of the Funds, | |
| Plaintiffs, | Case No.: 15 C 3404 |
| v. | Judge Shadur |
| DENOVO CONSTRUCTORS, INC., a foreign Corporation, and JONATHON MARKOFF individually, | |
| Defendants. | |

## MOTION TO REINSTATE AND CONFESS JUDGMENT

NOW COME Plaintiffs Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund, and James S. Jorgensen, Administrator of the Funds (collectively the "Funds"), by and through their attorney Patrick T. Wallace, and hereby move this Court to reinstate and Confess Judgement on the Settlement Agreement entered into by the parties in the above-captioned matter. In support of this Motion, Plaintiffs state as follows:

1. The Court entered a Dismissal Order on September 25, 2015 pursuant to an Agreed Stipulation to Dismiss filed by the Parties agreeing to dismiss the matter without prejudice and with leave to reinstate on or before October 15, 2016. The Court retained

jurisdiction and enforce terms of the Settlement Agreement and Installment Note ("Note") and Guaranty entered into by the Parties.

2. Denovo Constructors Inc. (hereinafter "Denovo" or the "Company") has defaulted on its obligations under the terms of the Settlement Agreement Note and Guaranty. Specifically, the Company has failed to make its scheduled December 1, 2015 installment due under the Note. The Company has also failed to timely submit and/or submit benefit reports and contributions owed to the Funds including, but not limited to, failing to submit the Company's October and November 2015 benefit and dues reports in the amounts due on those reports. See Affidavit of John Bronson attached hereto as Exhibit A, ¶ 3.

3. Accordingly, Plaintiffs respectfully request that the Court reinstate this matter and enter grant the following relief:

A. Enter judgment in favor of Plaintiffs and against Defendants Denovo Constructors, Inc. and Jonathan Markoff in the total amount of $36,815.86 representing the $35,825.86 due on the Note including liquidated damages due on the unpaid December 1, 2015 installment and $990.00 representing Plaintiffs' attorneys' fees and expenses in enforcing the Note and moving to reinstate the case.

B. Ordering Denovo to obtain and maintain a $50,000.00 surety pursuant to paragraph 11 of the Installment Note.

C. Ordering Defendants to pay post judgment interests on all amounts for the date of the Judgement Order until the date the Judgment Order is paid in full.

4. The settlement addressed findings on an audit of the Company's books and records through the period of November 2014 and the case was dismissed without prejudice to

the Funds' right to conduct an audit of the Company's books and records from the period of December 1, 2014 and collect any amounts revealed as due and owing therein. Plaintiffs respectfully request that the case be reinstated and Judgment entered without prejudice to the Funds and the Union's right to conduct an audit of the Company's books and records for the period of December 1, 2014 forward and to collect any unpaid contributions, wages, dues, interest, liquidated damages, and audit costs revealed as due and owing therein.

WHEREFORE, Plaintiffs respectfully request that the Court reinstate this matter and enter judgment in favor of Plaintiffs and against Defendant Defendants Denovo Constructors, Inc. and Jonathan Markoff in the amount of $36,815.86 representing all amounts due on the Installment Note including liquidated damages and attorneys' fees and costs incurred by the Funds, ordering Denova Constructors Inc. to obtain and maintain a $50,000.00 surety bond. Plaintiffs also request that Defendants be ordered to pay post-judgment interest from the date of the Judgment Order until the judgment is paid in full, and all other legal and equitable relief this Court deems just.

Respectfully submitted,

December 28, 2015

Laborers' Pension Fund, et al.

By: /s/ Patrick T. Wallace

Office of Fund Counsel
Laborers' Pension and Welfare Funds
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540

## CERTIFICATE OF SERVICE

The undersigned certifies that he caused a copy of the foregoing Motion to Reinstate and Confess Judgment to be served upon the following persons via the Court's electronic notification system this 28th day of December 2015.

Thomas S. Bradley
Laner Muchin, Ltd.
515 N. State St., Suite 2800
Chicago, IL 60654

/s/ Patrick T. Wallace

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND, LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CHICAGO LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, and JAMES S. JORGENSEN, Administrator of the Funds, Plaintiffs, v. DENOVO CONSTRUCTORS, INC., a foreign Corporation, and JONATHON MARKOFF individually, Defendants. | Case No.: 15 C 3404 Judge Shadur |

## AFFIDAVIT OF JOHN BRONSON

JOHN BRONSON, being first duly sworn on oath, deposes and states as follows:

1. I am a Field Representative employed by the Laborers' Pension Fund and the Laborers' Welfare Fund of the Construction and General Laborers' District Council of Chicago and Vicinity (hereinafter collectively referred to as the "Funds"), Plaintiffs in the above-referenced action. My responsibilities include oversight of the collection of amounts owed by Defendant DeNovo Constructors, Inc. (hereinafter "Denovo" or the "Company"). This Affidavit is submitted in support of the Laborers' Funds' Motion to Reinstate and to Confess Judgment. I have personal knowledge regarding the statements contained herein.

2. On September 22, 2015, the Company signed an Installment Note ("Note") in settlement of this case to pay contributions revealed as due and owing on an audit of the Company's books and record for the period of June 6, 2014 through November 30, 2014. A true



EXHIBIT A

and accurate Copy of the Note is attached hereto as Exhibit A-1. Simultaneously with the execution of the Note Defendant Jonathon Markoff, the President of Denovo, entered into a Guaranty of Payment and Indemnification Agreement (Guaranty") agreeing to personally guaranty the amounts due and owing on the Note. A true and accurate copy of the Guaranty is attached hereto as Exhibit A-2.

3. The Company is in default on the Note. Specifically, the Company failed to submit timely benefit contributions for September 2015 and has failed to submit benefit contributions for the months of October and November 2015 as required under the terms of the Collective Bargaining Agreement, the Funds' respective Agreements and Declarations of Trust and Paragraph 9 of the Note. The Company has also failed to submit payment of the installment due on December 1, 2015 in accordance with Paragraph 6 of the Note. Under the terms of the Note and Guaranty, the Company and Jonathon Markoff owe $35,123.40 in past due and accelerated payments due on the Note and $702.46 in liquidated damages on the unpaid December 2015 installment for a total due on the Note of $35,825.86.

4. Pursuant to Paragraph 11 of the Note and the Collective Bargaining Agreement, the Company must obtain and maintain a $50,000.00 Surety Bond.

FURTHER AFFIANT SAYETH NOT.

_____
John Bronson

Subscribed and sworn to before me
this  23RD  day of December 2015.

_____
Notary Public

"OFFICIAL SEAL"
EUGENIA MASHOS
Notary Public, State of Illinois
My Commission Expires 09/12/16

2

## INSTALLMENT NOTE

This Installment Note ("Note") is made between the Laborers' Pension Fund ("Pension Fund"), the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and the Retiree Health and Welfare Fund ("Welfare Funds" or collectively the "Funds"), the parties of the first part, and Denovo Constructors, Inc. (the "Company"), the parties of the second part.

WHEREAS, the Company has at all relevant times been party to a collective bargaining agreement ("CBA") with Local 225 the Construction and General Laborers' District Council of Chicago and Vicinity, whereunder it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund, on behalf of its covered employees, and to submit payment of all employee union dues;

WHEREAS, the Company has failed to timely pay certain contributions owed to the Funds for the audit period of June 6, 2014 through November 30, 2014.

WHEREAS, the Company has failed to remit all employee union dues to the Funds, as the designated collection agent for the Construction and General Laborers' District Council of Chicago and Vicinity, for the audit period of June 6, 2014 through November 30, 2014.

WHEREAS, the Company desires to pay all delinquencies owed to the Funds, to pay all union dues owed to the Construction and General Laborers' District Council of Chicago and Vicinity, together with liquidated damages, and interest, as set forth below and further desires to remain current in its obligation to pay contributions to the Funds.

THE PARTIES HEREBY AGREE as follows:

1. The Company will pay $20,533.19 to the Health and Welfare Fund (comprised of $14,396.15 in delinquent contributions, $4,187.60 in liquidated damages, $397.50 in attorneys fees and costs, $332.50 in audit costs and $1,219.44 in interest) (based on an interest rate of 12%). The Company will pay $8,431.24 to the Retiree Health and Welfare Fund (comprised of $5,481.50 in delinquent contributions, $1,748.49 in liquidated damages, $397.50 in attorneys' fees and costs, $332.50 in audit costs and $471.25 in interest). The Company will also pay $22,473.80 to the Pension Fund (comprised of $14,598.10 in delinquent contributions, $5,139.44 in liquidated damages, $795.00 in attorneys' fees and costs, $665.00 in audit costs and $1,276.26 in interest). All of these amounts shall be paid according to the schedule described below in paragraphs 5 and 6.

2. The Company will also pay $884.32 to the Training Fund (comprised of $721.25 in delinquent contributions, $144.25 in liquidated damages and $18.82 in interest), $113.72 to the LECET Fund (comprised of $100.98 in delinquent contributions, $10.10 in liquidated damages and $2.64 in interest), $194.93 to the LDCMC Fund (comprised of $173.10 in delinquent contributions, $17.31 in liquidated damages and $4.52 in interest) and $2,928.29 in union dues (comprised of $2,086.65 in delinquent contributions and $841.64 in liquidated damages). These delinquent amounts shall be paid in their entirety at the time the Note is signed along with the amounts due in paragraph 5.

3. The Company will also pay the Funds or the sum of $1,590.00 representing attorneys' fees and costs incurred by the Funds in Case No.15 C 3404. This amount is split between the Welfare, Retiree Welfare and Pension Funds as described in paragraph 1 above.

4. The Company will also pay the Funds the sum of $1,330.00 in audit costs. This amount split equally between Welfare and Pension as described in paragraph 1 above.

5. Simultaneously with the execution of this Note, the Company will pay twenty percent (20%) of the total outstanding indebtedness, excluding note interest and the delinquent amounts described above in paragraph 2, or $3,791.87 to the Health and Welfare Fund, $1,474.60 to the Retiree Health and Welfare Fund and $4,023.68 to the Pension Fund.

6. For twelve (12) consecutive months commencing on October 1, 2015 and ending on September 1, 2016, the Company will pay $1,395.11 per month to the Health and Welfare Fund, $579.72 to the Retiree Health and Welfare Fund and $1,537.51 per month to the Pension Fund.

7. The Company will remit all payments to the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154.

8. Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Funds' respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note, All amounts described in paragraph 1 herein shall immediately become due on the 10th day following the

EXHIBIT A-1

date on which payment should have been received by the Fund's under the terms of this Note. In such event the Company further agrees to pay all attorneys' fees and costs incurred by the Funds in any action to enforce any part of this Note.

9. This Installment Note is conditioned on the Company staying current on its obligations to the Funds under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that the Company fails to maintain its obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but no limited to, its obligations to submit timely contribution reports and to make timely contribution payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

10. The Company shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

11. If the Company defaults on payments due on the Note or fails to submit current benefit reports or dues reports for the time period when payments are due under the Note, the Company shall be required to obtain and maintain a surety bond in the amount of $50,000.00 to guarantee payment of future wages and benefit contributions.

The Parties hereby agree to these terms by their execution hereof on the 2<sup>d</sup> day of the Sept, 2015.

Denovo Constructors, Inc.

By: _____

Title: CEO

Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and Retiree Health and Welfare Fund.

By: _____

## GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty ("Guaranty") is made as of _Sept. 22, 2015_ by the undersigned, _Dimitrios K. Maffoff_, (the "Guarantor"), to and for the benefit of the LABORERS' PENSION FUND AND THE LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY (collectively, the "Funds").

WHEREAS, Denovo Constructors, Inc. (the "Company") has agreed to pay a total of $55,559.49 to the Funds in settlement of the alleged delinquent contributions owed to the Funds and to be paid under the terms of a Settlement Agreement and Installment Note ("Note").

WHEREAS, the Funds are unwilling to enter into the Note unless the Guarantor executes this Guaranty; and

WHEREAS, the Guarantor has a financial interest in the Company and will be benefited by the Note;

NOW THEREFORE WHEREAS, in consideration of the foregoing, the Guarantor agrees as follows:

1. <u>Guaranty of Payment and Indemnification.</u> The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the twelve (12) month payment period including interest and liquidated damages for late or unpaid payments due on the Note; and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post-judgment bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantor hereunder (the obligations of Guarantor under this Paragraph 1 are collectively hereinafter referred to as the "Obligations"). The Guarantor also agrees to be personally liable for all monthly benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs.

2. <u>Continuing Guaranty.</u> This Guaranty shall be a continuing Guaranty, and shall not be discharged, impaired or affected by: (a) the existence or continuance of any obligation on the part of the Company with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that the Company or any of the party thereto may have to the performance or observance of any term, covenant or condition contained in the Note; (e) the existence or non-existence of the Company as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of the Company's Obligations) that Guarantor may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of the Company or any discharge or limitation of the disability of the Company, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantor.

3. <u>Waivers.</u> Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty. It is the intention of this Guaranty that Guarantor shall remain liable as principal, notwithstanding any act, omission or thing that might otherwise operate as a legal or equitable discharge of Guarantor, until all of the Company's obligations shall have been fully paid and performed.

4. <u>Subrogation.</u> Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the Guarantor(s) expressly waive with respect to the Company any and all rights at law or in equity, to subrogation, to reimbursement, to exoneration, to contribution, to set off or to any other rights that could accrue to a surety against a principal, to the Guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantor may have or hereafter acquire against the Company in connection with or as a result of Guarantor's execution, delivery and/or performance of this Guaranty or the Note.

1



EXHIBIT A-2

The Guarantor agrees that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other party (including any surety), either directly or as an attempted set off to any action commenced against the Guarantor by the Company (as borrower or in any other capacity) or any other person.

5. **Independent Obligations.** The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds from suing on the Note or from exercising any other rights; and the Funds shall note be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6. **Acceleration.** In the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds.

7. **Effect of Bankruptcy.** This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8. **Termination.** This Guaranty shall remain in full force and effect as to the Guarantor until all of the Company's Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations from time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9. **The Company's Financial Condition.** The Guarantor assumes full responsibility for keeping fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

10. **Expenses.** The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's Obligations under the Note.

11. **Delay, Cumulative Remedies.** No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantor will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantor are cumulative.

12. **Binding Effect.** This guaranty shall inure to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantor and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantor, the obligations of such deceased Guarantor shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned hereunder, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

13. **Default.** The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. The Guarantor agrees to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution upon such judgement, hereby ratify and confirming all that said attorney may do by virtue hereof.

2

14. Warranties. Guarantor makes to the Funds the following representations and warranties:

(a) Authorization. Guarantor has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder

(b) No Conflict. The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

(c) Litigation. There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantor at law or in equity or before or by governmental agency or instrumentality that involve any of the transactions herein contemplated, or the possibility of any judgment or liability that may result in any material and adverse change in the financial condition of any Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

(d) Enforceability. This guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

15. Notices. All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (I) delivered in person, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, or (IV) on the day on which Guarantor refuses delivery by mail or by private courier service, and (b) addressed as follows:

| In Case of Guarantor | In Case of the Funds: |
|---|---|
| _____ | Collection Counsel |
| _____ | Patrick T. Wallace |
| _____ | Laborers Pension and Welfare Fund |
|  | Sub Office |
|  | 111 W. Jackson Blvd Ste 1415 |
|  | Chicago IL 60604-3868 |

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided. The Funds will use their best efforts to send courtesy copies of notices provided hereunder to Guarantor's attorney, _____. But the failure by the Funds to send courtesy copies to Guarantor's attorney shall not limit or restrict the Funds' rights under this Guaranty in any manner nor relieve Guarantor of any obligations under this guaranty.

16. Additional Waivers. Guarantor expressly and unconditionally waives, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief, (II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

17. Severability. If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

18. <u>Applicable Law; Venue.</u> This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and enter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue of any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. <u>Time is of the Essence.</u> Time is of the essence of this Guaranty as to the performance of the undersigned.

20. <u>Death of a Guarantor.</u> In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the three undersigned Guarantors has executed this instrument as of the date and year first above written.

_____  
JONATHAN KLINEHOFF  
_____  
Social Security Number  
Date: 9-22-2015

APPROVED AS TO FORM AND SUBSTANCE  
ON BEHALF OF GUARANTOR:

Dated: _____

4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND, LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CHICAGO LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, and JAMES S. JORGENSEN, Administrator of the Funds, <br><br>Plaintiffs, <br><br>v. <br><br>DENOVO CONSTRUCTORS, INC., a foreign Corporation, and JONATHON MARKOFF individually, <br><br>Defendants. | Case No.: 15 C 3404 <br><br> Judge Shadur |

## DECLARATION OF PATRICK T. WALLACE

I, PATRICK T. WALLACE, declare and state as follows:

1. I am Fund Counsel for Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (the "Laborers' Funds"), Plaintiffs in the above-referenced action. This Declaration is submitted in support of the Laborers' Funds' Motion for Entry of Default Judgment in Sum Certain.

2. Shareholders of the law firms of Allison, Slutsky & Kennedy, out-of-house collection counsel for the Laborers' Funds, bill the Laborers' Funds at a rate of $225.00 per hour for shareholders, $195.00 per hour for associates, and $110.00 per hour for paralegals. Affiant, as in-house counsel for the Laborers' Funds, has first-hand knowledge that the foregoing hourly



rates have been found reasonable and have been awarded by many courts in collection proceedings.

3. I received a Bachelor of Arts Degree from the University of Illinois at Urbana-Champaign in 1992 and a Juris Doctor Degree from the University of DePaul College of Law in 1995. I was admitted to the bar of the State of Illinois in November 1995 and to the bar of the United States District Court for the Northern District of Illinois in December 1995. I have also been admitted to the bar of the United States District Court for the Central District of Illinois. I was admitted to the Trial Bar of the Northern District of Illinois on September 20, 2000. From November 1995 to August 2000 I practiced labor and employment law as an associate at the law firm of Katz, Friedman, Eagle, Eisenstein & Johnson (formerly Katz, Friedman, Schur & Eagle). In September 2000, I became Funds Counsel for the Laborers' Pension Fund and Laborers' Welfare Fund for the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity.

4. Based on the foregoing, $225.00 represents a fair and reasonable market rate for my in-house legal services to the Funds in this matter.

5. Jerrod Olszewski, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from Benedictine University in 1993 and a Juris Doctor Degree from the John Marshall Law School in 2002. He was admitted to the bar of the State of Illinois in May, 2002, and to the bar of the United States District Court for the Northern District of Illinois in May, 2002. From May, 2002 to December, 2004, he practiced labor and employment law as an associate at the law firm of Katz, Friedman, Eagle, Eisenstein & Johnson, former out-of-house

counsel to the Laborers' Funds, with the majority of his work being spent representing the Laborers' Funds. In December, 2004, he became in-house counsel for the Laborers' Funds.

6. Based on the foregoing, $225.00 represents a fair and reasonable market rate for my and Jerrod Olszewski's in-house legal services to the Funds in this matter.

7. Amy Carollo, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from Illinois State University in 2000, Masters of Science from University of Illinois at Chicago in 2002 and a Juris Doctor from Chicago-Kent College of Law in 2005. She was admitted to the bar of the State of Illinois in November of 2005 and to the bar of the United States District Court for the Northern District in January 2006. In March 2006, she became in-house counsel for the Laborers' Funds.

8. Based on the foregoing, $225.00 represents a fair and reasonable market rate for Amy Carollo's in-house legal services to the Funds in this matter.

9. John Hamada, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from University of Illinois at Urbana-Champaign in 2000 and a Juris Doctor from Chicago-Kent College of Law in 2006. He was admitted to the bar of the State of Illinois in November of 2006 and to the bar of the United States District Court for the Northern District in January of 2007. In February of 2009, he became in-house counsel for the Laborers' Funds.

10. Based on the foregoing, $225.00 represents a fair and reasonable market rate for John Hamada's in-house legal services to the Funds in this matter.

11. Katherine Mosenson, in-house counsel for the Chicago Funds, received a Bachelor of Science Degree from the University of Illinois at Urbana-Champaign in 2009 and a Juris Doctor Degree from the John Marshall Law School in 2014. She was admitted to the bar of

the State of Illinois in May, 2014, and to the bar of the United States District Court for the Northern District of Illinois in May 2015. From November 2014 through April 2015, she was an administrative law judge at the Illinois Labor Relations Board. In May 2015, she became in-house counsel for the Funds.

12. Based on the foregoing, $195.00 represents a fair and reasonable market rate for Katherine Mosenson's in-house legal services to the Funds in this matter.

13. Kelly Carson, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from Purdue University in 2005 and a Juris Doctor Degree from Chicago-Kent College of Law in 2013. She was admitted to the bar of the State of Illinois in May 2014 and to the bar of the United States District Court for the Northern District of Illinois in August 2015. In August 2015, she became in-house counsel for the Laborers' Funds.

14. Based on the foregoing, $195.00 represents a fair and reasonable market rate for Kelly Carson's in-house legal services to the Funds in this matter.

15. Exhibit 1 attached hereto sets forth the time expended to date by Fund Counsel on this matter. As set forth in that Exhibit, we have expended 4.4 hours totaling $990.00 in attorneys' fees.

I, the undersigned, certify under penalty of perjury that the foregoing is true and correct.

Date: 12/28/15

Patrick T. Wallace

4

Laborers Pension and Welfare Funds
11465 Cermak Rd.
Westchester, IL 60154

Invoice submitted to:
Denovo Constructors

December 28, 2015

Invoice #10279

Professional Services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 11/11/2015 | PTW | Conference with JB; Telephone conference with KCVM; telephone call to T. Bradley; letter re: Defendant. | 0.50 225.00/hr | 112.50 |
| 11/17/2015 | PTW | Telephone conference with J. Bronson; Telephone conference with T. Bradley; letter re: delinquencies. | 0.50 225.00/hr | 112.50 |
| 11/30/2015 | PTW | Telephone conference with J. Bronson; telephone call to T. Bradley. | 0.10 225.00/hr | 22.50 |
| 12/7/2015 | PTW | Telephone conference with T. Bradley; Telephone conference with G. James; memo to file re: same. | 0.40 225.00/hr | 90.00 |
| 12/16/2015 | PTW | Telephone conference with J. Bronson; telephone call to T. Bradley; telephone call from T. Bradley; email to J. Bronson; memo. | 0.50 225.00/hr | 112.50 |
| 12/18/2015 | PTW | Telephone calls to T. Bradley; Conference with J. Bronson. | 0.30 225.00/hr | 67.50 |
| 12/22/2015 | PTW | Telephone conferences with T. Bradley; dictated Motion to Reinstate. | 1.10 225.00/hr | 247.50 |
| 12/23/2015 | PTW | Drafted Affidavit of John Bronson; edits to Motion. | 1.00 225.00/hr | 225.00 |

For professional services rendered  4.40  $990.00

Balance due  $990.00



Timekeeper Summary

| Name | Hours | Rate | Amount |
|---|---|---|---|
| Patrick T. Wallace | 4.40 | 225.00 | $990.00 |